UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NURIDEEN ISLAM,

                        Plaintiff,                   07 Civ. 3225(PKC)

    -against-

                                                 MEMORANDUM
                                                 AND ORDER

BRIAN FISCHER, et al.,

                        Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Nurideen Islam, suing under 42 U.S.C. § 1983, alleges that he was deprived of rights protected by the Eighth and First Amendments to the U.S. Constitution when he was subjected to second-hand smoke by state prison officials at the Fishkill Correctional Facility ("FCF").

        Seven individuals are named as defendants: Corrections Officers Pitre and Hirsch, Sergeant Turner, Lieutenant Simmons, William Connolly, the Superintendent of FCF, Lucien J. Leclaire, the Deputy Commissioner of Facilities Operations and Acting Commissioner of the New York Department of Corrections ("DOCS") and Brian Fischer, Commissioner of DOCS.

        Defendants Fischer, Leclaire and Connolly moved to dismiss on the ground that the complaint fails to allege facts against them as supervisors which are sufficient to satisfy Rule 8(a), Fed. R. Civ. P.  Defendant Hirsch moved for partial dismissal of the complaint on other grounds.  All defendants assert the defense of qualified immunity and also assert that all claims for money damages against them in their official capacities must be dismissed.

        For the reasons set forth herein, the motion is granted in part and denied in part.

-2-

I.

The complaint alleges that plaintiff has suffered injuries in the past and that he is at risk of serious harm in the future due to his daily exposure to dangerous levels of second-hand tobacco smoke inside the housing unit in which he resides. He further alleges that, as a result of his complaints about the indoor smoking situation, he has been subjected to threats and mistreatment by inmates and corrections officers.

Plaintiff alleges that, on October 6, 2006, he filed a grievance in which he alleged, inter alia, that he has been exposed to dangerous levels of second-hand smoke as a result of prison staff smoking indoors. Paragraph 18 of the Complaint alleges that Superintendent Connolly received plaintiff's grievance and found that there were no facts to support plaintiff's assertions. In paragraph 25, plaintiff alleges that he appealed Superintendent Connolly's decision. Superintendent Connolly is also alleged in paragraphs 46 and 59 to have denied subsequent grievances as without merit. Those decisions were also appealed. He also alleges that he wrote to Superintendent Connolly recommending that indoor air quality be tested weekly and/or monthly. Commissioner Fischer is alleged to have the responsibility of ensuring that subordinates comply with DOCS policies and procedures. He, along with all defendants, is alleged to have been indifferent to the health dangers of environmental tobacco smoke of which they were aware. Deputy Commissioner Leclaire is only mentioned in the general allegations relating to defendants and in connection with letters plaintiff received from DOCS, wherein the author states that he is responding to plaintiff's complaints at the request of Governor Pataki and Acting Commissioner Leclaire. Corrections Officer Hirsch is alleged to have smoked in the housing unit, to have failed to enforce the ban on indoor smoking, and to have incited hostility

-3-

amongst the inmates and other staff members towards plaintiff. Similar allegations are lodged against non-movant defendants Simmons, Turner and Pitre.

II.

On a motion to dismiss, a court must accept the allegations of the complaint as true and draw all reasonable inferences in the non-movant's favor. See Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007). Pro se pleadings are to be given a liberal and generous construction and are to be read to "raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Rule 8(a)(2), Fed. R. Civ. P., requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (alteration in Twombly). When a defendant tests the sufficiency of a complaint by a motion under Rule 12(b)(6), Fed. R. Civ. P., "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, 493 F.3d at 98 (quoting Twombly, 127 S. Ct. at 1965). The complaint is measured against a flexible "plausibility standard," which obligates the "pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal, 490 F.3d at 157-58. This "does not require heightened fact pleading of specifics," In re Elevator Antitrust Litig., __ F.3d __, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007); see Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); however, it does "require enough facts to 'nudge [plaintiff's] claims across the line

from conceivable to plausible.'" Elevator Antitrust Litig., 2007 WL 2471805, at *2 (quoting Twombly, 127 S. Ct. at 1974) (alteration in Elevator Antitrust Litig.).

A.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). "The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated." Iqbal, 490 F.3d at 152-53 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). Liability may not be anchored in a theory of respondeat superior. Hemmings v. Gorczyk, 134 F.3d 104, 109 n.4 (2d Cir. 1998) (per curiam). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." Colon, 58 F.3d at 874.

The mere receipt of a letter, complaint or grievance from an inmate is insufficient to establish a claim of personal involvement by a correctional supervisor. See Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (collecting cases holding that ignoring prisoners' letters of protest and requests for investigation is insufficient to premise section 1983 liability); Thompson v. New York, No. 99 Civ. 9875 (GBD) (MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001); Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000); see also Johnson v. Goord, No. 01 Civ. 9587 (PKC), 2004 WL 2199500, at *7 (S.D.N.Y. Sept. 29, 2004). However, "where a supervisory official receives and acts on a prisoner's

grievance (or substantially reviews and responds to some other form of inmate complaint), personal involvement will be found under the second Colon prong: 'the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong.'" Williams v. Fisher, No. 02 Civ. 4558 (LMM), 2003 WL 22170610, at *10 (S.D.N.Y. Sept. 18, 2003) (quoting Walker v. Pataro, No. 99 Civ. 4607 (GBD) (AJP), 2002 U.S. Dist. LEXIS 7067, at *42 (S.D.N.Y. April 23, 2002)); see Freeman v. Goord, No. 02 Civ. 9033 (PKC), 2004 WL 2002927, at *5 (S.D.N.Y. Sept. 8, 2004).

Drawing every reasonable inference in favor of the pro se plaintiff, I conclude that Islam has alleged facts sufficient to maintain a claim against defendant Connolly. Connolly is alleged to have personally acted on three grievances that touched upon the second-hand smoke issue. As to one grievance, Connolly is alleged to have "stated" that the two officers disputed plaintiff's version and that there were no facts to support plaintiff's version. (Complaint ¶ 18.) Connolly is alleged to have interviewed plaintiff and "the employees in question" concerning one of the grievances. (Id. ¶ 46.) Another grievance was rejected by Connolly as without merit. (Id. ¶ 59.) Taken as a whole and viewed in a light most favorable to plaintiff, the allegations are sufficient to state a claim that the superintendent of the facility was placed on notice of an unreasonable risk of serious harm which he failed to remedy, although it was within his power to do so. Of course, whether plaintiff can come forward with evidence of actual personal involvement by Connolly or deliberate indifference by him to plaintiff's rights are issues which are best addressed at the summary judgment stage.

In contrast, the liability of Leclaire is alleged to flow from the fact that on two occasions, in response to his smoking complaints, plaintiff received letters from Anthony J. Annucci, Deputy Commissioner and Counsel for the New York Department of

Correctional Services, in which Mr. Annucci states that he is responding at the request of Leclaire and Governor Pataki.  (Complaint ¶¶ 28, 43; Islam Aff. Ex. 9, Ex. 15.)  Plaintiff has not demonstrated the requisite personal involvement of Leclaire.  See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (affirming dismissal of claim against supervisory official where the only allegations of personal involvement were that the official referred issues raised by plaintiff to a subordinate and wrote to plaintiff informing him of that action).

The liability of Fischer is alleged to flow from the fact that he is a supervisor and has responsibility for enforcing policies.  (Id. ¶ 104.)  No facts are alleged that place Fischer on notice of the specific nature of his involvement with plaintiff or his complaints about second-hand smoke.  The allegations are insufficient to state a claim against Fischer or Leclaire.

B.

Defendant Hirsch, a Corrections Officer, is alleged to have failed to enforce the indoor smoking ban in the housing unit (Pl. Opp. Br 15), and to have continued to smoke in the housing unit (Complaint ¶ 54), even after learning of plaintiff's complaints.  He is also alleged to have embarked on a "twisted plot to create an atmosphere of hostility to have inmates and/or staff harm plaintiff's person or property."  (Id. ¶ 54.)

Defendant Hirsch moved to dismiss the retaliation claim asserted against him.  However, in his brief in opposition to the motion to dismiss, plaintiff disclaims any intention to assert a retaliation claim against Officer Hirsch, or any other defendant.  (Pl. Opp. Br. 2.)  The motion to dismiss the retaliation claim is therefore denied as moot.  I need not address any other claims plaintiff may have asserted against Officer Hirsch, because defendants have only moved on the retaliation claim.

-7-

III.

Having dismissed the claims against Fischer and Leclaire, I will consider whether defendants Connolly and Hirsch are entitled to qualified immunity as a matter of law. Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). The defense shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "While government officials are presumed to have a general knowledge of constitutional standards, they are clearly not required to anticipate 'the manner in which the law's grey areas will be clarified and defined.'" Gill v. Defrank, No. 98 Civ. 7851 (NRB), 2000 WL 897152, at *2 (S.D.N.Y. Jul. 6, 2000) (citations omitted), aff'd mem., 8 Fed. Appx. 35 (2d Cir. 2001); accord Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines'") (citation omitted), aff'd, 526 U.S. 603 (1999). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Defendants would be entitled to judgment in their favor on the issue of qualified immunity if the right violated were not clearly established at the time of the alleged violation, or there is no genuine dispute of material fact as to "whether . . . a reasonable police officer should have known he acted unlawfully . . . ." Lennon, 66 F.3d at 421; see also Hope v. Pelzer, 536 U.S. 730, 739 (2002); Wilson v. Layne, 526 U.S. 603, 614-15 (1999). If reasonable officials in

defendants' positions could disagree as to whether defendants' disciplinary actions against plaintiff were unlawful, summary judgment on the issue of qualified immunity is appropriate. Lennon, 66 F.3d at 421.

The Supreme Court has recognized that exposure to second-hand tobacco smoke may, in certain circumstances, satisfy the objective prong of an Eighth Amendment claim. See Helling v. McKinney, 509 U.S. 25, 31-35 (1993). As far back as 1999, the Second Circuit held that the right acknowledged in Helling was clearly established: "We hold that after Helling, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." Warren v. Keane, 196 F.3d 330, 333 (2d Cir. 1999); see Johnson, 2004 WL 2199500, at *20.

As to defendants Connolly and Hirsch, I cannot say at the juncture of a motion to dismiss whether the defense of qualified immunity will be available to them. In reversing the grant of summary judgment on qualified immunity in Warren, the Court noted that "[u]ntil the facts are determined, we are unable to say that any prison official reasonably could have believed that the alleged severe exposure to ETS did not violate the plaintiffs' Eighth Amendment rights." 196 F.3d at 333.

IV.

Defendants assert that if and to the extent they are being sued for money damages in their official capacities, then the claim in actuality is against the state and must be dismissed under principles of sovereign immunity. The Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996), observed that the Eleventh Amendment confirms two

presuppositions of constitutional proportion: "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,' . . . ." (citations omitted). See Federal Maritime Com'n v. South Carolina State Ports Authority, 535 U.S. 743, 766 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit."). A state may waive its immunity provided it does so in an unequivocal fashion. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1 (1985); CSX Transp., Inc. v. New York State Office of Real Property Services, 306 F.3d 87, 95 (2d Cir. 2002). Also, Congress may abrogate a state's sovereign immunity "pursuant to a valid exercise of power." Seminole, 517 U.S. at 55. Section 1983 does not abrogate a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 338-46 (1979); Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (per curiam).

Eleventh Amendment immunity also extends to damage actions against State employees acting in their official capacities, because the State is the real party of interest. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-03 (1984); Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988). "When the state itself, rather than the state employee whose name appears in the caption, is the real party [of] interest, the suit is said to be brought against the employee in his 'official capacity.' The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity." Farid, 850 F.2d at 921 (citing Kentucky v. Graham, 473 U.S. 159, 166-67 (1985)). Employees of DOCS and its facilities, when sued in their official capacities, have been held to be subject to the State's Eleventh Amendment immunity. See Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (Commissioner of DOCS and officials of

Attica); see also Verley v. Goord, No. 02 Civ. 1182 (PKC) (DF), 2004 WL 526740, at *9 (S.D.N.Y. Jan 23, 2004) (report and recommendation adopted by order of June 2, 2004); Gowins v. Greiner, No. 01 Civ. 6933 (GEL), 2002 WL 1770772, at *3-*4 (S.D.N.Y. July 31, 2002) (citing Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.1999)).  Thus, to the extent that the plaintiff seeks damages under section 1983 against defendants in their official capacities, that portion of the claim is dismissed from this action.

V.

In his brief in opposition to the motion to dismiss, plaintiff seeks the removal of counsel for the defendants, the Office of the Attorney General of the State of New York (the "AG's Office").  Plaintiff's position is that the AG's Office has a conflict of interest because, in various actions against cigarette manufacturers and other members of the tobacco industry, it has taken the position that tobacco use is a public health problem.  There is nothing to suggest that the AG's Office will take a different position in this lawsuit, or that the defendants dispute plaintiff's contention that second-hand smoke is harmful.  I find that the involvement of the AG's Office in the proceedings identified by plaintiff is not an appropriate ground for removing the AG's Office as counsel for defendants in this action.  Plaintiff's request is denied.

VI.

The motion to dismiss is GRANTED in part and DENIED in part as follows: (1) plaintiff has failed to sufficiently allege personal involvement as to defendants Fischer and Leclaire and they are dismissed from this action; (2) plaintiff has stated a claim against defendant Connolly for the failure to remedy an unreasonable risk of serious harm of which he had notice; (3) the motion to dismiss the retaliation claim against Hirsch is moot; (4) the defense of qualified

immunity does not provide a basis for the dismissal of the action as to any defendant at this early stage; and (5) plaintiff's claim, to the extent it seeks money damages against any defendant in his official capacity, is dismissed. Plaintiff's request that the State of New York Office of the Attorney General be removed as counsel for defendants in this matter is denied.

SO ORDERED.

*[signature]*
P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 9, 2008